UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ductcap Products, Inc.,

    Plaintiff,

 v.

J & S Fabrication, Inc. and
Randy W. Smith,

    Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 09-1179 ADM/FLN

_____

Jeffrey C. Brown, Jeffrey C. Brown & Assoc. PLLC, on behalf of Plaintiff.

Monte A. Mills, Esq., and Robert J. Gilbertson, Esq., Greene Espel P.L.L.P., Minneapolis, MN, on behalf of Defendant, J & S Fabrication, Inc.

_____

## I. INTRODUCTION

On September 22, 2009 oral argument was heard before the undersigned United States District Judge on J & S Fabrication, Inc.'s ("J&S") Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 4]. For the reasons stated herein, J&S's Motion to Dismiss for Lack of Personal Jurisdiction is granted.

## II. BACKGROUND

Plaintiff Ductcap Products, Inc., ("Plaintiff") is a Minnesota corporation with its principal place of business in Willmar, Minnesota. Compl. ¶ 1 [Docket No. 1]. Plaintiff sells flexible duct covers that protect the internal components of unfinished heating, ventilation, and air-conditioning ("HVAC") ductwork from moisture, dirt, and debris. Id. ¶ 5. J&S, a Pennsylvania corporation with its principal place of business in Grantville, Pennsylvania, develops, sells, and distributes sheet metal products and other products for the HVAC industry, including the Smith

Slip cover.  Id.  ¶¶ 2, 7.  Randy W. Smith ("Smith") is an individual residing in Nevada.

Plaintiff applied to the U.S. Patent and Trademark Office ("PTO") to patent its duct cover.  Id. ¶ 6.  The application was granted, and the PTO issued U.S. Patent No. 6,874,541 ("the '541 Patent").  Id. ¶ 6.

In 2004, Plaintiff learned that Smith was selling over the Internet a duct cover called the Smith Slip™ that Plaintiff believed infringed the '541 Patent. Vossen Decl. [Docket No. 13] ¶ 4.  In August or September 2004, Plaintiff contacted Smith and expressed its concerns.  Id. ¶ 5.  After a series of discussions and correspondence, Plaintiff alleges that Smith agreed to stop selling the Smith Slip™ cover.  Id. ¶ 6.

In approximately January 2008, Plaintiff attended a trade show in New York and noticed a vendor, Elgen Manufacturing, displaying and providing samples of the Smith Slip™ cover.  Id. ¶ 7.  Plaintiff learned from a representative of Elgen Manufacturing that the company was promoting the Smith Slip™ cover at the trade show on behalf of J&S.  Id. ¶ 8.  Plaintiff later discovered that J&S had purchased the Smith Slip™ design patent and inventory from Smith and was selling it as a duct cover.  Vossen Decl. ¶ 9.

In April 2008, J&S mailed an advertisement for the Smith Slip™ cover to six Minnesota businesses; however, J&S received no response to those advertisements.  Kline Decl. ¶ 7.  On June 4, 2008, Plaintiff, through its attorney Jeffrey C. Brown ("Brown"), sent a letter to J&S asserting superior rights to the duct cover premised on the filing of Plaintiff's patent application prior to the Smith Slip™ patent application.  Brown Decl. [Docket No. 4], Ex. C.  The letter asked J&S to contact Plaintiff to "begin the process of discussing a reasonable royalty on [J&S's] sales of the Smith Slip."  Id.  In October 2008, J&S mailed an advertisement to Sheet

2

Metal Connectors, Inc., a Minnesota company and one of Plaintiff's customers. Brown Decl. ¶ 8. On May 19, 2009, Plaintiff sent a letter to J&S charging that the Smith Slip™ infringed on the '541 Patent and demanding that J&S "immediately cease and desist from the sale of the Smith Slip™ and advise its customers that continued use of the product exposes them to patent infringement liability." Brown Decl., Ex. D. The letter further requested that "J&S pay a reasonable royalty for infringing products it has sold in the past." Id. Plaintiff simultaneously filed this patent infringement lawsuit. Brown Decl. ¶ 4.

## III. DISCUSSION

### A. Standard of Review

District courts apply the law of the Federal Circuit, rather than that of regional circuits, to determine whether personal jurisdiction is appropriate in patent infringement cases. Red Wing Shoe Co., Inc. v. Hockerson-Halbertstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998). When personal jurisdiction is based on affidavits and other written materials, rather than an evidentiary hearing, a plaintiff need only make a prima facie showing that defendants are subject to personal jurisdiction. Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1347 (Fed. Cir. 2002). In considering a motion to dismiss, the facts alleged in the complaint must be accepted as true and any factual conflicts must be resolved in the plaintiff's favor. Id.

### B. Personal Jurisdiction

Under the Due Process Clause of the United States Constitution, a party may be subject to either general or specific jurisdiction. The exercise of general jurisdiction is proper when the defendant had continuous and systematic contacts with the forum state, even if those contacts are

3

unrelated to the cause of action. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Neither party currently contends J&S is subject to general jurisdiction in Minnesota, and, therefore, the issue is whether J&S's various contacts and activities make it subject to specific jurisdiction in Minnesota.

Generally, specific jurisdiction may be exercised over a non-consenting defendant outside the boundaries of the forum if: (1) the exercise of jurisdiction is permitted by the forum state's long-arm statute; and (2) the exercise of jurisdiction by the courts of the forum state comports with the Due Process Clause of the United States Constitution. See Genetic Implant Sys., Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-76 (1985)). The Minnesota Supreme Court has interpreted the state's long-arm statute to "extend the personal jurisdiction of Minnesota courts as far as the Due Process Clause of the federal constitution allows." Valspar Corp v. Lukken Color Corp., 495 N.W.2d 408, 410 (Minn. 1992). As a result, the two-step inquiry collapses into the single question of whether jurisdiction comports with due process. Red Wing, 148 F.3d at 1358 (applying Minnesota law).

The Federal Circuit has promulgated a three factor test to determine whether asserting jurisdiction over an out-of-state defendant comports with due process: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to the defendant's activities with the forum;" and (3) whether the assertion of personal jurisdiction is "reasonable and fair." Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed Cir. 2001) (quoting Akro Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995)). The first two factors correspond with the "minimum contacts" prong of the International Shoe

4

analysis, and the third factor corresponds with the "fair play and substantial justice" prong of the analysis.  See International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); see also Akro, 45 F.3d at 1546.  Should the plaintiff meet the burden of establishing minimum contacts, defendants must prove that the exercise of jurisdiction is unreasonable.  Akro, 45 F.3d at 1546.

Plaintiff argues that J&S has sufficient minimum contacts with Minnesota to satisfy due process making the exercise of specific jurisdiction appropriate.  Plaintiff alleges J&S purposefully directed activities at residents of Minnesota by: (1) mailing advertisements to several Minnesota businesses;[1] (2) placing an advertisement in a nationally circulated magazine; and (3) operating a website that allows prospective customers to purchase the Smith Slip over the internet.

J&S's contacts with this forum do not satisfy due process and are insufficient to confer personal jurisdiction.  As an initial matter, J&S does not have offices, facilities, employees, or representatives in Minnesota.  Kline Decl. ¶ 5.  J&S has never sold any Smith Slip™ covers in Minnesota and has never entered into any contract with a Minnesota resident.  Id.  ¶¶ 4, 6.

Plaintiff contends J&S, by sending an advertisement for the Smith Slip™ cover to six Minnesota businesses in 2008, has directed sufficient contacts at the state to support personal jurisdiction.  Plaintiff maintains that patent infringement occurs when a party, "without authority, makes, uses, offers to sell, or sells any patented invention, within the United States."  35 U.S.C. § 271(a).  Plaintiff argues that J&S's advertisement constituted an "offer to sell."  By offering to sell the Smith Slip™ in Minnesota, Plaintiff argues, J&S infringed Plaintiff's patent;

---

[1] J&S mailed an advertisement to six Minnesota businesses between April and October 2008.

therefore, there is a direct connection between the contacts and the issue in this suit, establishing specific jurisdiction. Plaintiff relies on 3D Systems, Inc. v. Aarotech Laboratories., Inc., 160 F.3d 1373 (Fed. Cir. 1998) to support his assertion that an offer to sell is any communication by the defendant to prospective buyers that includes a description and price. However, in Rotec Industries, Inc., v. Mitsubishi Corp., 215 F.3d 1246, 1255 (Fed. Cir. 2000), the Federal Circuit revisited its interpretation of "offer to sell" in 3D Systems and concluded that the phrase must be read according to the norms of traditional contract law. Id. at 1254-55. Under contract law, an offer is a communication "which the other party could make into a binding contract by simple acceptance." Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1048 (Fed. Cir. 2001). Based on this principle, courts often conclude that advertisements and promotional materials do not constitute offers. Moldflow Corp. v. Simcon, Inc., 296 F. Supp. 2d 34 (D. Mass. 2003). Here, J&S's advertisement listed a variety of options available to prospective buyers, but lacked the definite terms that would create a binding contract between J&S and the recipient if the recipient simply accepted. Additional, material terms, including price, quantity, and terms of delivery, needed to be negotiated. J&S's advertisements were merely invitations to bargain, not offers to sell. See Am. Fed. Bank, FSB v. U.S., 62 Fed. Cl. 185, 195 (2004) ("Where 'advertising and promoting of a product' are not sufficiently definite to constitute contractual offers, they may instead be 'an invitation for offers, while responding to such an invitation may itself be an offer.'" (quoting Linear Tech. Corp. v. Micrel Inc., 275 F.3d 1040, 1051 (Fed. Cir. 2001))); see also Mesaros v. United States, 845 F.2d 1576, 1580-81 (Fed. Cir. 1988). Furthermore, "the mere solicitation of business by a foreign person does not constitute transacting business in the state. To be doing business, negotiations must ultimately lead to a 'substantial connection' with the

forum, creating an affirmative obligation there." Hillebrand v. Streck Mfg. Co., 279 F.3d 1351, 1354 (Fed. Cir. 2002). Here, J&S's contacts with Minnesota companies rise only to the level of soliciting business; no other affirmative obligation resulted, and, therefore, J&S's connections with Minnesota are insufficient to support the exercise of personal jurisdiction.

Plaintiff next argues that J&S's advertisement in a nationally circulated magazine establishes sufficient minimum contacts with Minnesota. The advertisement was not targeted exclusively at Minnesota but was instead part of a national and international marketing strategy to promote the Smith Slip™ cover. Kline Decl. ¶ 8. Courts have consistently held that advertising in a national trade journal is insufficient to confer personal jurisdiction. Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 33 n.10 (3d Cir. 1993); Wines v. Lake Havasu Boat Mfg., 846 F.2d 40 (8th Cir. 1988); Charia v. Cigarette Racing Team, Inc., 583 F.2d 184, 187, 190 (5th Cir. 1978).

Finally, Plaintiff contends J&S satisfies the "minimum contacts" requirement because it operates an Internet website for the purchase of Smith Slip™ covers. Again, J&S's website is not specifically directed at Minnesota customers. Significantly, the website has not generated any sales in Minnesota. The Federal Circuit has repeatedly held that the existence of a website, available to any person with access to the Internet, is not sufficient to establish jurisdiction over a defendant. See, e.g., Campbell Pet Co. v. Miale, 542 F.3d 879, 884 (Fed. Cir. 2008); Trintec Indus. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1281 (Fed. Cir. 2005).

The Court finds that J&S did not purposefully direct its activities at the residents of Minnesota. As a result, it is unnecessary to consider the other two prongs of the specific-jurisdiction test. See Akro, 45 F.3d at 1545.

7

C.	**Jurisdictional Discovery**

Arguing in the alternative, Plaintiff requests permission to conduct limited, jurisdictional discovery. Jurisdictional discovery is within the discretion of the district court but may be denied if the plaintiff has failed to meet its burden of establishing a threshold, prima facie case of personal jurisdiction. See Maynard v. Philadelphia Cervical Collar Company, Inc., 18 F. App'x 814, 817-18 (Fed. Cir. 2001); Tuttle v. Lorillard Tobacco Co., 118 F. Supp. 2d 954, 959 (D. Minn. 2000). Plaintiff has failed to meet this burden, and, for that reason, jurisdictional discovery is denied.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that J&S's Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 4] is **GRANTED**.

BY THE COURT:


　　　s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: October 2, 2009.